# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1377 | **DATE** | 12/9/2003 |
| **CASE TITLE** | John Reyes vs. Equifax Credit Information | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing held.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. First North America Bank's motion to reconsider its motion to compel aribtration (Doc. No. 15-1) is granted. The complaint is hereby dismissed without prejudice as to Defendant FNANB.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | 2 number of notices | **Document Number** |
| ✓ | Notices mailed by judge's staff. | | DEC 10 2003 date docketed | |
| | Notified counsel by telephone. | | | 32 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 12/9/2003 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| ETV | courtroom deputy's initials | Date/time received in central Clerk's Office | ETV mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN REYES, | ) | |
| | ) | **DOCKETED** |
| Plaintiff, | ) | |
| | ) | DEC 1 0 2003 |
| v. | ) No. 03 C 1377 | |
| | ) | |
| EQUIFAX CREDIT INFORMATION | ) | Judge Rebecca R. Pallmeyer |
| SERVICES and FIRST NORTH | ) | |
| AMERICA BANK, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff John Reyes applied for and was issued a credit card through Defendant First North American National Bank ("FNANB"). On March 14, 2003, he brought this action alleging that FNANB and Defendant Equifax Credit Information Services ("Equifax") have violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by falsely reporting to third parties that Reyes filed for bankruptcy. Reyes also charges Equifax with defamation in connection with these credit reports. On May 16, 2003, FNANB moved to dismiss the complaint and compel arbitration under the terms of the credit card agreement. The court denied the motion on June 27, 2003 and FNANB now seeks reconsideration of that ruling. For the reasons set forth here, the court grants the motion for reconsideration and orders arbitration of Plaintiff's claims against FNANB.

## BACKGROUND

On December 23, 1994, Reyes and his girlfriend Jenia Tahmasebi jointly applied for a Circuit City credit card, which was issued through FNANB. Reyes signed the credit card application as a co-applicant and listed as his mailing address an address on Los Feliz Boulevard in Los Angeles, California – the same address provided by Tahmasebi. (Ex. 1 to Motion to Reconsider.) In submitting the application, Reyes signed a statement acknowledging that he had received and

32

reviewed a copy of the Circuit City Credit Card Agreement ("Credit Card Agreement"). (*Id.*) That agreement stated:

> If your Account is a joint account or if more than one person is permitted to use the Account, you agree that all notices regarding the Account may be sent solely to the address shown on our billing records. You agree to give us written notice of any change in your billing address. Any such change will become effective upon our receipt of your written notice at the Bank's designated office.

(Ex. 2 to Motion to Reconsider ¶ 25.) The Credit Card Agreement also stated that:

> You promise to pay us in accordance with the terms of this Agreement for all purchases and advances made under the Account plus Finance Charges and any other charges due under the terms of this Agreement.

(*Id.* ¶ 2.) The terms "you," "your," and "yours" are defined as "each person signing the application for a credit card account." (*Id.* ¶ 1(a).) The Credit Card Agreement further notified applicants that "[u]pon prior written notice as is required by applicable law, we may change the terms of this agreement." (*Id.* ¶ 19.)

FNANB approved the joint credit card application submitted by Reyes and Tahmasebi and mailed out their two credit cards on or about December 23, 1994. (Hewett Aff., Ex. 3 to Motion to Reconsider.) Several years later in September 1997, FNANB sent its cardholders, including Reyes and Tahmasebi, a Notice of Amendment to Agreement ("Notice"). (*Id.*) The Notice contained the following mediation and arbitration clauses:

> MEDIATION. Either you or we may request that a claim be submitted to nonbinding mediation. Such claim shall be subject to nonbinding mediation if the other party so agrees within 60 days of you or us making the request by letter. Any such mediation so agreed to shall be held in the federal judicial district in which you reside, and shall be conducted according to the mediation rules of the National Arbitration Forum. You and we agree further to share the cost of any such mediation equally. No mediation shall commence unless both parties agree to it, and no mediation shall continue if either party declares an impasse.
>
> ARBITRATION. Except as provided below, you and we agree that any claim that is not resolved through the nonbinding mediation process outlined above shall be resolved by binding arbitration conducted by and according to the Code of Procedure of the National Arbitration Forum in effect at the time the claim is filed . . .

(Ex. 4 to Motion to Reconsider.) The Notice notified cardholders that "[b]y using your credit card anytime following the date of this amendment, you agree to the terms enclosed herein" and "acknowledge that you prefer to resolve any claims, disputes or controversies through the mediation and arbitration provisions set forth above." (*Id.*) Cardholders who did not want to agree to these new terms could return their credit card to FNANB and continue paying off their account balances under the existing terms. (*Id.*)

Sometime after FNANB sent out the Notice, it allegedly began falsely reporting that Reyes had filed for bankruptcy. Reyes responded with this lawsuit. FNANB moved to compel arbitration of the dispute pursuant to the September 1997 Notice, but on June 27, 2003, this court denied that motion on the basis that Reyes never signed the Notice containing the arbitration clause. *Reyes v. Equifax Credit Info. Servs.*, No. 03 C 1377 (N.D. Ill. June 27, 2003, Docket No. 14.) FNANB moved for reconsideration, arguing that Reyes' signature was not required to render the arbitration provision valid and enforceable, and that issues of contract formation are, in any event, to be considered by the arbitrator, not by this court. Reyes claims that he never got the Notice and argues that enforcing the provision would be unconscionable and prohibitively expensive.

## DISCUSSION

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act establishes a "federal policy favoring arbitration" and requires that courts "rigorously enforce agreements to arbitrate." *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (internal quotations omitted). The party opposing arbitration bears the burden of proving that the claims at issue are not referable to arbitration. *Green Tree Financial Corp. - Alabama v. Randolph*, 531 U.S. 79, 91-92 (2000); *Popovich v. McDonald's Corp.*, 189 F. Supp. 2d 772, 775 (N.D. Ill. 2002).

3

As a preliminary matter, FNANB suggests that an arbitrator, and not this court, should determine the merits of Reyes's objections to the arbitration agreement. (Motion to Reconsider, at 6.) In support of this position, FNANB cites *Green Tree Financial Corp. v. Bazzle*, 123 S.Ct. 2402 (2003), in which the Supreme Court held that it was for an arbitrator to decide whether the contracts at issue prohibited class arbitration. *Id.* at 2407. The court finds *Green Tree* easily distinguishable from this case, however, because there was no dispute that the parties had a valid arbitration agreement. *Id.* Here, Reyes denies that he has entered into an enforceable arbitration agreement with FNANB and, thus, the court will consider his arguments. As *Green Tree* recognized, courts assume that parties intend courts, and not arbitrators, to decide such issues as "whether the parties have a valid arbitration agreement at all". *Id.*

In determining whether parties have entered into a valid agreement to arbitrate, "courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). *See also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) ("arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit") (internal quotations omitted). Reyes argues that the arbitration agreement is unconscionable "by its very nature" because credit card applicants had no choice whether to agree to its terms. (Pl. Response, at 5.) The court disagrees. The Notice of Amendment containing the arbitration provision specifically instructed cardholders that they could reject the amended terms by returning their credit cards to FNANB, and still pay off any account balance under the pre-existing terms. (Ex. 4 to Motion to Reconsider.) Given that cardholders had a clear opportunity to reject the amendment, it was not unconscionably one-sided on its face. *See Walton v. Experian*, No. 02 C 5067, 2003 WL 22110788, at *2 (N.D. Ill. Sept. 9, 2003) (in considering identical amendment to credit card agreement at issue in this case, court held that "since plaintiff had a clear option to reject the amended terms . . . the contract is mutual").

4

This does not resolve the issue, however, because Reyes claims that he never received the Notice containing the new arbitration provision, which was "delivered to someone else at a different address." (Pl. Response, at 5; Reyes Aff. ¶ 4.) Implicit in this argument is that Reyes no longer lives at the Los Feliz Boulevard address listed on the credit card application. (*Id.*) (questioning "[w]hat happens in the event that the regular addressee moves, dies, or otherwise disappears?") Under the terms of the original Credit Card Agreement, however, it was Reyes's responsibility as a joint account holder to notify FNANB of any address change. FNANB presented evidence that Reyes communicated with the bank prior to 1997, and Reyes has not asserted that he ever notified FNANB that his address had changed. Nor does he cite any cases indicating that an arbitration agreement is unenforceable against a party who did not receive the agreement because he failed to fulfill a contractual duty to provide a current address.

In addition, although the court's bench ruling on this motion focused on the absence of Reyes's signature, Reyes does not challenge FNANB's assertion that the arbitration agreement did not require a separate signature in order to be valid. In *Fyrnetics (Hong Kong) Ltd. v. Quantum Group, Inc.*, 293 F.3d 1023 (7th Cir. 2002), the Seventh Circuit affirmed a ruling that a license agreement required arbitration of plaintiffs' claims of misrepresentation, negligence, and breach of warranty, but remanded for a determination of whether one of the plaintiffs, a non-signatory, was nevertheless bound by that agreement. *Id.* at *1-2. On remand, the court noted that "[i]n the absence of a signature, a party can be bound by an agreement's arbitration provision if that party's conduct 'manifest[s] an intention to be bound by that [a]greement.'" No. 99 C 4704, 2003 WL 164220, *2 (N.D. Ill. Jan. 23, 2003) (quoting *Thomson-CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 777 (2d Cir. 1995)). The court found such an intent because FHK assumed the license agreement with the arbitration clause by becoming a sublicensee of another plaintiff. *Id.*

Here, Reyes chose to apply for a credit card with FNANB and signed the accompanying Credit Card Agreement, which stated that its terms could be modified upon "prior written notice"

and that all notices would be sent to the billing address (presumably, the address provided on the credit card application) unless the cardholder provided FNANB with a new address. (Ex. 2 to Motion to Reconsider ¶¶ 19, 25.) On these facts, Reyes has not demonstrated that the arbitration agreement is invalid merely because he did not receive or sign it. See, e.g., Tinder v. Pinkerton Security, 305 F.3d 728, 735-36 (7th Cir. 2002) (enforcing arbitration agreement in Title VII case where employee claimed she never received it but employer testified that the agreement was included with employee's payroll check).

Also unavailing is Reyes's objection that the arbitration agreement is unconscionable because it is "one-sided" and FNANB is "without a doubt the 'stronger party' to the contract." (Pl. Response, at 6.) The Walton court recently rejected a similar argument, noting that "mere disparity of bargaining power is not sufficient grounds to vitiate contractual obligations." 2003 WL 22110788, at *2 (citing Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 32 (1991)). As in Walton, Reyes "could have easily applied for other credit cards if [he] did not like the terms of the amended agreement." Id. Thus, FNANB's stronger bargaining position does not render the arbitration agreement unconscionable.

Finally, Reyes attempts to avoid arbitration by arguing that it would be prohibitively expensive. An arbitration agreement may be unenforceable if a party would "be saddled with prohibitive [arbitration] costs." Green Tree Financial Corp. - Alabama, 531 U.S. at 90-92. The party seeking to invalidate an arbitration agreement on the grounds that arbitration would be prohibitively expensive bears the burden of showing the likelihood of incurring such costs. Id. at 92. Specifically, the party objecting to arbitration on this ground "must provide some individualized evidence that it likely will face prohibitive costs in the arbitration at issue and that it is financially incapable of meeting those costs." Livingston v. Associates Finance, Inc., 339 F.3d 553, 557 (7th Cir. 2003).

Reyes claims that he "cannot afford the financial burdens that arbitrating his claim would impose." (Pl. Response, at 8.) He notes that in the court system, he would not have to pay a fee for each hearing and could represent himself even if he could not afford an attorney. (Id.) Reyes does not explain why he would be unable to represent himself in an arbitration hearing. In any event, Reyes directs the court to the National Arbitration Forum ("NAF") fee schedule which, he claims, indicates that "a claim filed between $15,000 and $30,000 has costs that exceed $1,200." (Id. at 9.) He argues that this is a "steep expense" compared to filing a lawsuit for $150. He also speculates that if he were unable to prove actual damages, his $1,000 in statutory damages under the FCRA "would be completely swallowed up by the NAF fee schedule and Plaintiff would be in a worse position than when he began because he would still owe an extra $200 plus dollars." (Id.)

The court does not find any of these arguments persuasive. Reyes has not explained how the costs of arbitrating his claims will exceed $1,200, much less "swallow up" any purported statutory damages. The NAF fee schedule states that consumer claimants must pay a filing fee of $60 and another $250 for the participatory hearing. (Ex. B to Pl. Response.) Reyes has not submitted any evidence that he cannot afford $310 or that such an amount is prohibitive. See Walton, 2003 WL 22110788, at *3 (finding arbitration not prohibitively expensive under arbitration agreement identical to the one at issue in this case). Courts have declined to enforce arbitration provisions due to the cost, but each of these cases involved expenses significantly greater than those presented here. For example, in Phillips v. Associates Home Equity Servs., Inc., 179 F. Supp. 2d 840 (N.D. Ill. 2001), the arbitration agreement provided that arbitration would be conducted through the American Arbitration Association ("AAA"). Id. at 843. The plaintiff presented evidence from the AAA that she would have to pay upwards of $4,000 just to file her claim, and that she would also have to split the costs of the arbitrator's fee, which averaged $1,800 per day, travel expenses, and rental of a hearing room. In addition, the plaintiff submitted an affidavit attesting to her inability to afford these expenses. Id. at 846.

In *Shankle v. B-G Maintenance Mgmt. of Colorado, Inc.*, 163 F.3d 1230 (10th Cir. 1999), the plaintiff signed an arbitration agreement as a condition of continued employment. *Id.* at 1234. The employer sought to arbitrate the plaintiff's employment discrimination claim but the court found it prohibitively expensive. According to the court, "[t]he typical employment case averages between fifteen to forty hours of arbitrator time" so the plaintiff would have to pay an arbitrator between $1,875 and $5,000 to resolve his claims. *Id.* at 1234-35, n.5. *See also Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054, 1062 (11th Cir. 1998) (in concurring opinion, judges found arbitration clause unenforceable in Title VII case where it provided no prospect for meaningful relief and the plaintiff would have to pay a $2,000 filing fee pursuant to AAA rules as well as "at least half the hefty cost of an arbitration"). Reyes's conclusory assertion that he cannot afford the financial burdens of arbitration, without more, is insufficient to demonstrate that arbitration would be prohibitively expensive in this case. *See Ortiz v. Winona Memorial Hosp.*, No. 1:02-CV-1975-JDT-TAB, 2003 WL 21696524, at *7 (S.D. Ind. June 4, 2003) (citing *Tinder*, 305 F.3d at 735) ("a party cannot avoid compelled arbitration by conclusory assertions").

## CONCLUSION

For the reasons stated above, FNANB's Motion to Reconsider its motion to compel arbitration (Doc. No. 15-1) is granted. The complaint is hereby dismissed without prejudice as to Defendant FNANB.

ENTER:

Dated: December 9, 2003

REBECCA R. PALLMEYER
United States District Judge

8